## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 20 2019, 7:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Betty J. Richards, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 20, 2019 <br><br> Court of Appeals Case No. 19A-CR-1315 <br><br> Appeal from the Ripley Circuit Court <br><br> The Honorable Ryan J. King, Judge <br><br> Trial Court Cause No. 69C01-1808-F3-2 |

**Altice, Judge.**

# Case Summary

Betty Richards pled guilty to Level 3 felony dealing in methamphetamine and was sentenced to twelve years. Richards appeals, arguing that her sentence is inappropriate in light of the nature of the offense and her character.

We affirm.

# Facts & Procedural History

On August 2, 2018, Indiana State Trooper Joseph May went to Richards's home looking for Jeremy Wall, Richards's son, on a felony probation violation warrant. Richards answered the door and informed Trooper May that Wall was not there. Richards allowed Trooper May to come inside and search the residence for Wall. While looking through the southernmost bedroom that Richards identified as being her other son's room, Trooper May observed in plain view a prescription bottle containing Alprazolam, a controlled substance prescribed to Walter Dixon. When questioned whether Dixon lived there, Richards explained that Dixon was her boyfriend and that he had passed away in March.

While another trooper spoke with Richards about the medication, Trooper May saw in plain view on a coffee table in the living room a plastic bag that contained pills later identified as Alprazolam. Trooper May confirmed that no one living in the home had a valid prescription for Alprazolam. He then advised Richards of her Miranda rights and she indicated that she understood them. Richards then admitted to smoking marijuana and methamphetamine a

few days prior. She also admitted to selling methamphetamine and informed Trooper May that he would likely find glass pipes in her bedroom and seven grams of methamphetamine in her purse.[1]

[5] After Trooper May gave Richards her Pirtle warning, Richards "allowed" him to search her bedroom and belongings. *Appellant's Appendix Vol. Two* at 14. The search revealed that Richards had over $380 in cash in denominations of $20 bills or smaller. Richards retrieved a glass smoking pipe that was hidden behind the television in her bedroom. Eventually, Trooper May secured a search warrant for the residence. During the continued search of the residence, officers located three plastic bags containing a crystalline substance, later identified as methamphetamine, under the television in Richards's bedroom. Located with the methamphetamine, Officers found a cut plastic straw and three hypodermic syringes.

[6] During a recorded interview, Richards admitted that she had seven to eight grams of methamphetamine in the house, that she smokes methamphetamine in the house, and that she had been selling methamphetamine a couple times a week for about a month to "three people at the most." *Id*. at 15.

[7] On August 7, 2018, Richards was charged with Count I, dealing in methamphetamine as a Level 3 felony; Count II, unlawful possession of a

---

[1] Richards could not find the methamphetamine she claimed was in her purse and suggested that someone must have taken it.

syringe as a Level 6 felony; Count III, possession of a controlled substance as a Class A misdemeanor; Count IV, possession of paraphernalia as a Class C misdemeanor; and Count V, maintaining a common nuisance as a Level 6 felony. Richards entered into a plea agreement wherein she agreed to plead guilty to Count I and the State agreed to dismiss the remaining charges and to a sentencing cap of twelve years, which is four years less than the maximum permitted for a Level 3 felony. The trial court held a combined guilty plea and sentencing hearing on January 15, 2019. After accepting Richards's guilty plea, the trial court sentenced Richards to twelve years incarceration. Richards now appeals. Additional evidence will be provided as necessary.

## Discussion & Decision

[8] Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by

restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[9] "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[10] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Here, Richards pled guilty to a Level 3 felony, which carries with it a sentencing range of three to sixteen years and an advisory sentence of nine years. *See* Ind. Code § 35-50-2-5.

[11] With regard to the nature of the offense, Richards admitted to dealing methamphetamine to several people on several occasions, in addition to using it herself. We further note that methamphetamine and paraphernalia were found in Richards's bedroom, which is where her grandchildren slept when they visited.

[12] As to Richards's character, we note that this is not her first encounter with the criminal system. In 1998, Richards was charged with Class D felony operating

while intoxicated (OWI)[2] but pled guilty to receive an alternate misdemeanor sentence such that her record would reflect a misdemeanor conviction after the completion of probation. Two months after pleading guilty, Richards violated the terms of her probation. As a result, Richards's probation was extended. In 2005, Richards was charged with Class D felony OWI as a habitual substance offender. Richards pled guilty to a Class A misdemeanor and was sentenced to probation. Shortly thereafter, a petition to revoke Richards's probation was filed. Over ten years later, Richards was brought before the court and she admitted to violating probation. The court found that Richards absconded from the jurisdiction to avoid having her probation revoked.

[13] Although Richards claims that her prior criminal convictions are unrelated to the instant offense because they did not involve methamphetamine, we note that her prior convictions do involve substance abuse. Indeed, on account of her prior convictions, Richards was required to participate in substance-abuse treatment. We similarly reject her claim that because she only recently started using methamphetamine, she should be viewed as a new drug addict and afforded leniency because of it. Richards is not new to substance abuse. She has simply substituted one addiction for another. This time around, she not only used methamphetamine, but she sold it to other individuals. At sentencing, the trial court stated that it believed Richards understated the

---

[2] Richards was also convicted of misdemeanor OWI in 1985.

number of times she sold methamphetamine, noting specifically that she had $380 dollars in her purse.

[14] While neither the nature of the offense or character of the offender are particularly egregious, we note that Richards's plea agreement is "strong and persuasive evidence of sentence reasonableness and appropriateness." *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006) (Dickson, J., concurring). We should "grant relief only in the most rare, exceptional cases." *Id.* Richards has not demonstrated that this is such a case. In short, we cannot say that the twelve-year sentence imposed by the trial court is inappropriate.

[15] Judgment affirmed.

Robb, J. and Bradford, J, concur.